The plaintiff warranted four defendants, Muse, Spivey, McNeill and McDonald, on a former judgment for $40, and on 1 January, 1837, judgment was rendered against the four for debt, interest and costs. The justice then made this entry: "The defendant Jesse F. Muse, no other defendant in the case being present, prays an appeal, and it is granted, by giving for surety one William D. Harrington." In the County Court several pleas were put in generally for the defendants, (183) and the cause pended until July, 1847, when Spivey came into court and declared that the appeal had been taken *Page 140 
and prosecuted without his consent or knowledge, and moved to dismiss the same. The court refused the motion; and then the plaintiff moved to dismiss the appeal. But the court refused that motion, also, and the plaintiff appealed. The Superior Court at the next term refused to take cognizance of the plaintiff's appeal, and dismissed it, and remanded the case with a writ of procedendo to the County Court. At July Term, 1849, the plaintiff again moved the County Court to dismiss the appeal from the judgment of the justice of the peace, upon the ground that it was a joint judgment against four defendants, and one of them only appealed; which motion was overruled, and the plaintiff appealed. At February Term, 1850, the Superior Court reversed the last decision of the County Court, and allowed the motion of the plaintiff to dismiss the appeal, upon the ground stated by the plaintiff, and thereupon the defendant Muse, by consent, was allowed to appeal to this Court.
The decision of his Honor, from which this appeal was taken, is in conformity with the judgments then recently given by this Court in the case of Smith v. Cunningham,30 N.C. 460, and Donnell v. Shields, ib., 371, and was, probably, founded on those judgments. Of course, as a majority of the Court concurred in them, his Honor's decision must stand affirmed, unless the minds of those judges can be fully convinced that they were, before, wrong. As that is not the case, it would ordinarily be sufficient to refer to the previous cases. But as there is not now an unanimity among the (184) judges, it is, perhaps, proper that the reasons which govern the majority should be stated a little more at large. Upon recurring to the cases mentioned, it will be perceived that they occurred in 1848, and that the whole Court at that time united in them; and also that they professed to follow, and, in fact, do follow a rule laid down upon this point in the earlier cases of Dunns v. Jones,20 N.C. 291, and Hicks v. Gilliam, 15 N.C. 217 — the former of which occurred in 1838 and the latter in 1833, at which periods two other judges sat in the Court, and the Court was then also of one mind. It is also a fact well known that the case of Hicks v. Gilliam was decided in conformity with the previous general opinion and the established practice of the profession. Under such circumstances the Court does not consider it allowable now, whatever might have been the opinions ab origine of the judges individually, to overturn a rule and principle laid down and *Page 141 
acted upon as the ground of decision of the rights of persons in such a series of cases. The importance of adhering to well-considered judicial precedents, running through several generations of lawyers and judges, can hardly be overrated. It is difficult duly to estimate it, except by turning one's mind to the mischiefs which would arise from a total disregard of them, and the misery; to a people, who could not tell what the law was under which they were living until they took the opinion of the judge for the time being upon every particular question. That would, indeed, be both a new and a dangerous principle — one which the Court cannot adopt. But the majority of the Court must acknowledge that, as it seems to them, the old decisions are right which do not allow an appeal to one of two or more defendants from a joint verdict and judgment. It is true, hardships not infrequently grow out of the rule; and it must not be supposed that the judges hitherto have not been aware of them, and willing to prevent them, if (185) they could. In some of the cases the hardship was as great as it could be — for example, in Donnell v. Shields, 30 N.C. 371; and observations were made on the hardship with the view of calling the attention of the Legislature to it. But the grievance has ever been found to be beyond the reach of the judicial function. If to be remedied at all, it requires the power of the Legislature; and we are persuaded that, whenever the attempt shall be made, the subject will be found to be one which will require much caution and consideration to provide a fit remedy without producing or opening the way for greater mischiefs than those obviated. At all events, the courts have no power of legislating upon the subject. The statute gives the right of appeal, and by it annuals the judgment appealed from, and directs a trial de novo in the appellate court, except in appeals to the Supreme Court. How is it possible a court can say that as to one of the persons against whom the judgment was given, it is annulled, but not as to the others? The language is the same as to appeals by defendants and by plaintiffs. Now, if one defendant can have an appeal, how can it be denied to one of the two plaintiffs? We do not say that the two cases ought to be governed by the same rule; that is for the Legislature to determine. But it seems to us, as a matter of judicial construction of a statute, or of judicial authority independent of a statute, an action standing for trial on issues before a jury cannot in this State be split up, so that different parts of the case will be in different courts at the same time, in the one instance more than in the other. It has been supposed that the court is at liberty to do so upon what is called a new *Page 142 
principle laid down by the Legislature, namely, that contracts shall be deemed joint and several, and that actions may be brought accordingly. But, clearly, that cannot affect rights to which that principle has not been applied by the (186) Legislature, or alter the constructions of statutes previously existing. If the Legislature adopts a new policy, the courts must enforce it as far as the enactment commands or authorizes. But they cannot carry the principle itself further than the Legislature has carried it, so as to make it reach cases which the Legislature would not venture to touch. When a statute authorized an appeal from a judgment against two upon a joint contract, it followed, upon the principles of common law, that there could not be an appeal, unless both defendants joined in it; because the judgment could not be for one and against the other, but must be for both, unless it were against both. There another statute authorizes a creditor to sue on a joint contract as if it were joint and several — that is, to sue all the parties together or separately. When the creditor sues jointly, surely it is not for the defendants, or one of them, to say that the creditor shall be deprived of that privilege, and each of them be allowed to appeal and turn the joint action into several ones. Nor can the court allow, without some statute to help them, that upon a judgment against two the plaintiff may take out several executions as upon two separate judgments. The symmetry of the law would be completely marred thereby. It is true that when an action ex contractu is brought against two, there may be a verdict and judgment for one and against the other, as was held in Jones v. Ross, 4 N.C. 335; and that seems to have been carrying the construction of the act of 1789 very far — further than, on principle, it ought to be carried, because it allowed of a variance between the declaration and evidence by permitting the plaintiff to recover on the several contract of one, when the issue is whether the two contracted together. But it was so decided, and so long decided and acted on that in Brown v. Conner, 32 N.C. 75, the Court deemed it a duty to submit to it. Yet that decision by (187) no means affects the construction of the statutes granting appeals, or alters the rule of law as to the process to be sued out on joint judgments. A particular enactment, altering the law in one point or on one subject, cannot be judicially extended to other points and other subjects not within the purview of the act; but each statute is necessarily to be construed in reference to the previous law upon the subject of that act, the mischief and the remedy provided by the act. The acts granting appeals form a system of law upon that subject, and *Page 143 
are to be construed upon their own terms and such reasons as apply to that particular subject; and, as it seems to the majority of the Court, the point is concluded by authority and entirely supported by reason, that an appeal, on which another trial by jury is to be had, cannot and ought not to be taken by one of several defendants, by himself, so as thereby to split up the cause into several parts and greatly multiply costs.
It must, therefore, be certified to the Superior Court that there is no error in the order of that court from which the appeal was taken to this Court; so that the Superior Court may remit the case to the County Court, with directions to dismiss the appeal to that court from the judgment of the justice of the peace, to the end that the plaintiff may have execution of the judgment given by the justice of the peace.